IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ADMIRALTY ISLAND FISHERIES, Inc., a Washington Corporation, d/b/a Aqua Star,<br><br>Plaintiff,<br><br>V.<br><br>MILLARD REFRIGERATED SERVICES, INC., a Georgia Corporation, and DOES 1 TO 50 INCLUSIVE,<br><br>Defendants. | CASE NO. 8:05CV541<br><br><br><br>MEMORANDUM AND ORDER |
| NATIONAL FIRE INSURANCE OF HARTFORD as subrogee of Suram Trading Corporation,<br><br>Plaintiff,<br><br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON as subrogee of Icicle Seafoods, Inc., and<br><br>HARTFORD CASUALTY INSURANCE COMPANY, as subrogee of Global Fishing, Inc.,<br><br>Intervening Plaintiffs,<br><br>V.<br><br>MILLARD REFRIGERATED SERVICES, INC.,<br><br>Defendant. | CIVIL ACTION 8:06CV421<br><br><br><br>MEMORANDUM AND ORDER |

This matter is before the Court on cross-motions for partial summary judgment. The Plaintiff National Fire Insurance of Hartford as subrogee of Suram Trading Corporation filed

a motion for partial summary judgment (Filing No. 67 reviving Filing No. 35), in which Admiralty Island Fisheries has joined. (Filing No. 68). The Defendant, Millard Refrigerated Services, Inc. ("Millard") has filed a motion for partial summary judgment against those Plaintiffs (Filing No. 70 and 72), and Plaintiffs Certain Underwriters at Lloyd's of London as subrogee of Icicle Seafoods, Inc., and Hartford Casualty Insurance Company, as subrogee of Global Fishing, Inc. (Filing Nos. 69 and 71) (hereafter the subrogees and subrogors will be referred to collectively as the "Plaintffs"). The cross-motions ask the Court to determine the legal effect of relevant limitation of liability clauses.

### *Factual Background[1]*

Millard operates cold storage warehouses throughout the country. Suram, Icicle, Global, and Admiralty have all stored seafood products in a Millard warehouse. It is undisputed that, as each truckload of seafood was delivered by the Plaintiffs to Millard warehouse, Millard issued a warehouse receipt. The warehouse receipts contain the parties' agreement regarding the storage of the seafood product.

Sometime in March 2006, Millard discovered that several pounds of seafood that were owned by the various Plaintiffs were missing. Millard conducted an internal investigation into the loss and determined that at least some of the seafood had been stolen by some of its employees. Millard ultimately terminated five of its employees for theft of seafood that was supposed be stored in the warehouse. The five employees admitted to stealing only small quantities of the seafood, which was a sufficient basis for

---

[1] The factual background is taken from the statement of undisputed facts that are supported with pinpoint references to the record and the admitted facts as set forth in the parties' briefs. (8:05cv541; Filing Nos. 36, 72, and 82). Michael McTier's complete deposition is at Filing No. 37.

terminating their employment. National Fire contends that Millard's former employees stole more than 94,000 pounds of seafood with a fair market value of $455,000. Millard contends that its liability for the loss is limited to 50 cents per pound, or $47,000. The issue presented on these cross-motions for partial summary judgment is whether the limitation of liability clause is enforceable, assuming that the former employees were responsible for the theft.

### *Analysis*

Consistent with the UCC, warehouse receipts may contain a limitation of liability provision that limits the warehouse operator's liability for the stored products in the case of loss or damage. Millard's warehouse receipts include a limitation of liability clause. The Plaintiffs seek a declaration from the Court that the limitation of liability clause contained on the back of the warehouse receipt is of no effect if the Plaintiffs succeed in demonstrating that Millard employees stole the seafood. The Defendant, on the other hand, asks the Court to conclude as a matter of law that the parties' contract permits Millard to limit its liability for the loss of the seafood to 50 cents per pound, regardless of whether the disappearance of the seafood is attributable to theft by the Millard employees.

### *The Warehouse Receipt*

The front of the warehouse receipts in question contain the following provision, in all capital lettering:

> Limitation of liablity: Unless the depositor declares a valuation higher than $.50 per pound or $12.00 per cubic foot for stored goods and such declared higher value is agreed to in writing by the warehouseman, the warehouseman's liability for loss or damage thereto shall be expressly limited as specifically set forth in Section 10(e) of the standard contract terms on the reverse side hereof.

The front of the warehouse receipt also provides:

> The goods listed hereon in apparent good order [sic], except as noted hereon (contents, condition and quality unknown) subject to all terms and conditions herein and on the reverse hereof. Such property to be delivered to the Depositor upon the payment of all storage, handling and other charges.

On the back of the receipt is Section 10(e), copied below in the same manner that it appears in the receipt, states:

> IN THE EVENT OF LOSS, DAMAGE OR DESTRUCTION TO STORED GOODS FOR WHICH COMPANY IS LEGALLY LIABLE, STORER DECLARES THAT COMPANY'S LIABILITY FOR DAMAGES SHALL BE LIMITED TO THE LESSER OF THE FOLLOWING AMOUNTS: (1) THE ACTUAL COST TO DEPOSITOR OF REPLACING OR REPRODUCING THE DAMAGED GOOD TOGETHER WITH TRANSPORTATION COSTS TO THE WAREHOUSE, (2) THE FAIR MARKET VALUE OF THE GOODS ON THE DATE DEPOSITOR IS NOTIFIED OF LOSS, DAMAGE OR DESTRUCTION, (3) 50 TIMES THE MONTHLY STORAGE CHARGE APPLICABLE TO SUCH LOST, DAMAGED, OR DESTROYED GOODS OR (4) THE GREATER OF (I) $.50 PER POUND NET WEIGHT OF THE GOODS, EXCLUSIVE OF TARE, OR (II) $12.00 PER CUBIC FOOT, PROVIDED, HOWEVER, THAT WITHIN A REASONABLE TIME AFTER RECEIPT OF THIS WAREHOUSE RECEIPT, DEPOSITOR MAY, UPON WRITTEN REQUEST, INCREASE WAREHOUSEMAN'S LIABILITY ON PART OR ALL OF THE GOODS STORED UNDER THE WAREHOUSE RECEIPT, IN WHICH CASE AN INCREASED CHARGE WILL BE MADE BASED UPON SUCH INCREASED VALUATION; FURTHER PROVIDED THAT NO SUCH REQUEST SHALL BE VALID UNLESS MADE BEFORE LOSS, DAMAGE OR DESTRUCTION TO ANY PORTION OF THE GOODS STORED UNDER THIS WAREHOUSE RECEIPT HAS OCCURRED.

Section 10(f) states:

> The limitation of liability referred to in paragraph (e) above shall be Depositor's exclusive remedy against Warehouseman for any claim or cause of action whatsoever relating to loss, damage and/or destruction of the

stored goods and shall apply to all claims including inventory shortage and mysterious disappearance claims unless Depositor proves by affirmative evidence that Warehouseman converted the good to its own use. Depositor waives any right to rely upon any presumption of conversion imposed by law. In no event shall Depositor be entitled to incidental, special, punitive or consequential damages.

(*See e.g.*, Filing No. 69, Ex. 5).

### *Applicable Provisions of the Uniform Commercial Code*

The Court finds that Uniform Commercial Code § 7-204 applies to the facts presented. Section 7-204, captioned ***Duty of Care; Contractual Limitation of Warehouse's Liability,*** states:

> (a) A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. Unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care.
>
> (b) Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage beyond which the warehouse is not liable. ***Such a limitation is not effective with respect to the warehouse's liability for conversion to its own use***. On request of the bailor in a record at the time of signing the storage agreement or within a reasonable time after receipt of the warehouse receipt, the warehouse's liability may be increased on part or all of the goods covered by the storage agreement or the warehouse receipt. In this event, increased rates may be charged based on an increased valuation of the goods.

### *Plaintiffs' Motion for Partial Summary Judgment*

Because a warehouse operator would not be liable at all absent a failure of due care, a failure of due care by Millard must be established before the enforcement of the limitation of liability clause even becomes an issue.[2] The Plaintiffs ask the Court to

---

[2] The limitation of liability provision does not become material unless there has been liability established on the part of the warehouse operator. There is no dispute the Millard Refrigerated was in

assume that they can prove their seafood disappeared due to employee theft. The Court might assume, for purposes of this motion, that Millard was negligent in hiring the former employees without checking their backgrounds for criminal history or in failing to maintain security over the seafood after it was deposited at the warehouse. These assumptions relate to the threshold issue of Millard's lack of due care. For purposes of this motion only, the Court will assume that Millard was negligent in failing to prevent the former employees' theft of the Plaintiffs' property.

Under Nebraska law, conversion is "any unauthorized or wrongful act of dominion exerted over another's personal property which deprives the owner of his property permanently or for an indefinite period of time." *Roth v. Farmers Mutual Insurance Company of Nebraska*, 371 N.W. 2d 289, 291 (Neb. 1985). Under this definition, there is no dispute that the former Millard employees committed an intentional conversion of the Plaintiffs' property. Assuming Millard's liability arising out ordinary negligence under Section 7-204(a), the limitation of liability provision applies according to Section 7-204(b), unless the warehouse operator's liability arises out of a conversion "for its own use." The Court agrees with the observation of the commentators that "conversion for it own use" as used in Section 7-204(a) must mean something more and different than simple conversion. *See* Comment Note No. 4, UCC § 7-204 (2005)(explaining that "[c]onversion to its own

---

possession of the seafood, and that the seafood is not available to return to the bailors. A presumption of negligence by Millard Refrigerated, the bailee, arises. Therefore, under U.C.C. section 7-204(1), Millard must be held liable for the loss unless it can rebut the presumption that it was negligent. If unable to rebut the presumption, then Millard's liability can be limited assuming the limitation of liability provision is effective. For purposes of this motion only, the Court will assume that Millard failed to act with due care in permitting the Plaintiffs' seafood to be stolen from its cold storage facility.

use" is narrower than the idea of conversion generally" and disapproving "[c]ases such as *Lipman v. Peterson,* 575 P.2d 19 (Kan. 1978) holding to the contrary. . .. ")

The limitation of liability provision applies in the presence of ordinary negligence unless there is proof that the former employees' theft, the conversion, was for the purpose of advancing Millard's interests. Enforcement of a limitation of liability clause is not a complete defense to liability, but it must be raised as would an affirmative defense because it benefits the defendant. For that reason, the Court concludes that the burden of proof should be on the warehouse operator to demonstrate that the conversion of the bailor's property was not for its own use. In reaching this legal conclusion, the Court acknowledges its rejection of Millard's attempt to place the burden on the Plaintiffs as stated in the warehouse receipts' paragraph 10(f). To place the burden of proof on the Plaintiffs, as bailors, would ignore the policy arguments that support the enforcement of limitation of liability provisions in commercial contracts.[3]

Millard has come forward with evidence that the conversion was not for its own use. Millard's general manager, Michael McTier, conducted an investigation into the Plaintiffs' losses. As a result of the investigation, five employees were fired for theft. McTier believes, based on the investigation, that all losses were caused by the former employees'

---

[3] According to at least one commentator, there are good reasons to place the burden of proof on the warehouse operator. First, the warehouse operator is in the best position to explain the loss because the operator has taken control of the goods and has determined the manner in which they are stored. Second, placing the burden on the warehouse operator to show that it acted with due care will encourage warehouse operators to act with care and caution in the handling and storage of bailed goods and to maintain adequate tracking systems that will withstand judicial scrutiny. Third, placing the burden on operators will also have a beneficial effect on the industry because those warehouses that are unable to establish that their storage practices are reasonable will incur increased operating costs, eventually forcing poorly-run facilities out of business. Last, placing the burden on the warehouses will give the operators incentive to procure insurance on all bailed goods entrusted to them which the operators can procure, presumably at a lower cost than would be incurred if each bailor had to procure its own insurance. "A Warehouse's Burden of Proof," Ralph Anzivino, *UCC Law Journal* (Spring 2004).

theft. (Filing No. 79, McTier Dep. 159). At least one of the former employees has stated that the seafood was sold to a third-party. McTier has testified that Millard did not benefit in any way from the theft.

The Plaintiffs have not come forward with any evidence to create a genuine issue of material fact regarding whether the conversion – the theft – was for Millard's own use. Plaintiffs argue that the conversion was for Millard's own purposes because it 1) was committed within the authorized space and time of the employees' employment, 2) was committed while they were performing duties for which they were hired, and 3) "was actuated, at least in part, by a purpose to serve the master [Millard]." (Filing No. 82, p. 12). The crux of Plaintiffs' argument is that Millard's interests were furthered by the conversion because Millard was paying the former employees to work while they were also stealing; the former employees used Millard's equipment, including pallets, forklifts, and trucks, to accomplish the theft; and the former employees conducted the theft during hours when they were "also" working. I do not agree that these facts are evidence that the conversion was to Millard's own use. The former employees' abuse of their employment position does not automatically transform their conversion to a conversion for Millard's own use. Absent undisputed facts that the conversion was for Millard's own use, the Court concludes that the Plaintiff's motion for partial summary judgment is denied.

### *Millard's Motion for Partial Summary Judgment*

Millard also moves for partial summary judgment asking the Court to confirm the enforceability of the limitation of liability clauses in its warehouse receipts. Because there are genuine issues related to the degree of Millard's negligence, Millard's motion will be denied. The Court, assuming ordinary negligence on the part of Millard, has found that the

Plaintiffs have failed to come forward with evidence to create a genuine issue regarding whether the former employees stole the seafood to further Millard's own interests. There is no evidence that the conversion was to Millard's own use. It would seem to follow that the limitation of liability clause is enforceable to limit the damages that Millard may owe to the Plaintiffs.

This case does not present a relationship involving a monopoly or parties of unequal bargaining power that might make the contract unenforceable. Where ordinary commercial relationships exist, the Eighth Circuit Court has upheld "the strong public policies of recognizing parties' liberty to contract and enforcing contracts as written." *Sander v. Alexander Richardson Investments*, 334 F.3d 712, 719 (8th Cir. 2003). The Plaintiffs had an opportunity to negotiate for a higher price per pound to be paid under the limitation of liability clause in the event of loss, but Plaintiffs did not. As a result, they were not obligated to pay the higher storage costs that likely would have come with a limitation of liability clause that was more advantageous to them. Rather, the parties agreed that the risk of loss greater than 50 cents per pound would be borne by the Plaintiffs.

However, in opposition to Millard's motion, the Plaintiffs argue that the limitation of liability clause should not be enforced as against public policy. The Plaintiffs contend that it will show at trial that Millard acted with gross negligence in failing to prevent the theft. If the Plaintiffs are able to demonstrate at trial that the failure of due care on the part of Millard constitutes gross negligence, not just ordinary negligence, then enforcement of the limitation of liability clause may be contrary to public policy. *See New Light Company, Inc. v. Wells Fargo Alarm Services*, 525 N.W.2d 25, (Neb. 1994)(holding that exculpatory clause in parties' agreement was void as against public policy to the extent that it purported

9

to relieve fire alarm company from liability for its own gross negligence or willful and wanton misconduct). "Whether a particular exculpatory clause in a contractual agreement violates public policy depends upon the facts and circumstances of the agreement and the parties involved." *Id.* (noting that the greater the risk to human life and property, the stronger the argument in favor of voiding attempts by a party to insulate itself from damages caused by that party's gross negligence or willful and wanton misconduct.)  "Gross negligence" has been defined as:

> [G]reat and excessive negligence; that is, negligence in a very high degree. It indicates the absence of slight care in the performance of a duty. . . . Willful and wanton misconduct exists where a defendant had actual knowledge that because of its actions, a danger existed to the plaintiff and the defendant intentionally failed to act to prevent a harm that was reasonably likely to result.

*Id.* at 30.  Both the Plaintiffs and Millard have offered evidence relative to the degree of care exercised by Millard in connection with the seafood.  There is some evidence that Millard knew of the thefts or should have known of them several months before Millard did anything about it.  Because there are genuine issues of fact regarding the reasonableness of the security steps Millard took and did not take, whether Millard's conduct rises to the level of gross negligence is an issue for the jury.   Accordingly, Millard's motion for partial summary judgment will also be denied.

IT IS ORDERED:

1. The Plaintiffs' Motions for Partial Summary Judgment (Filing Nos. 35 and 44 in Case No. 8:05cv541; and Filing Nos. 70 and 100 in 8:06cv421) are denied; and

2. The Defendant's Motions for Partial Summary Judgment as to the Plaintiffs (Filing Nos. 69, 70, 71, and 72 in Case No. 8:05cv541; and Filing Nos. 101, 102, 103, and 104 in Case No. 8:06cv421) are denied.

DATED this 14th day of November, 2007.

                                              BY THE COURT:

                                              s/Laurie Smith Camp
                                              United States District Judge